IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Harold Jamar Wilson, # 306094, )<br>)<br>)<br>                               Petitioner, )<br>)<br>            vs.                         )<br>)<br>Joseph McFadden, *Warden*,       )<br>)<br>)<br>                             Respondent. )<br>_____) | Civil Action No. 6:14-4287-RBH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

        The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

        The petitioner is currently serving a life sentence at the Perry Correctional Institution of the South Carolina Department of Corrections ("SCDC"). The petitioner and his co-defendant, Dwauntrez Keith, were indicted by the Sumter County Grand Jury on September 4, 2003, and charged with murder, assault and battery with intent to kill ("ABWIK"), attempted armed robbery, and possession of a firearm during the commission of a crime of violence (app. 697–99). The petitioner was represented by Richard A. Blackmon. The State was represented by Assistant Solicitor W. Harry Connor, Jr., of the Third Judicial Circuit Solicitor's Office (app. 1–287). On November 15–18, 2004, the petitioner received a jury trial before the Honorable Howard P. King, South Carolina Circuit

Judge.  The jury convicted the petitioner of the indicted offenses.  Judge King sentenced the petitioner to life imprisonment for murder and to twenty years consecutive on the ABWIK charge.  The petitioner also received a twenty-year sentence for attempted armed robbery.  Judge King ordered this sentence consecutive to the murder sentence and concurrent to the ABWIK sentence.  Judge King imposed a five-year sentence on the weapons charge consecutive to all other sentences (app. 1–613).

Subsequently, the petitioner moved for a new trial or, in the alternative, for review and reconsideration of the sentence.  Trial counsel submitted a memorandum in support of this motion, and the State submitted a memorandum opposing the motion (doc. 15-5, 15-6).  Judge King denied the motion in an order filed on April 29, 2005 (doc. 15-7).

### *Underlying Case Facts*

The State presented the following facts at the petitioner's trial.  On the evening of May 19, 2003, several witnesses were standing around outside in a residential neighborhood in Sumter, South Carolina.  Herbert Linwood "Daddy Rabbit" Butler testified that he was sitting on his bicycle and talking with Dalamar "D.L." Burroughs, Reginald "Reggie" Foster, and Edward Maurice "Reese" Dingle, when the petitioner, known as "Twinkie," walked up with Dwauntrez "Trez" Keith (the petitioner's co-defendant).  According to Mr. Butler, the petitioner told Mr. Dingle "LET ME GET THAT WHAT'S IN YOUR POCKET" (app. 340).[1]  The petitioner "CHILLED FOR A MINUTE" and then "POINTED THE GUN AT" Mr. Dingle and again asked for what he had in his pocket (app. 340).  He then said, "I SHOULD HAVE KILL Y'ALL ASS RIGHT NOW FOR WHAT Y'ALL DONE TO ME UP THERE BY THE CHURCH" (app. 340–41).  Mr. Butler put his head down to open a package of cookies he had just bought.  Then he heard gun shots, looked up, and saw the petitioner pointing the gun at him.  Mr. Butler tried to run but was shot and fell to the ground.

---

[1]The trial transcript is in all capital letters font.

2

He eventually made it to an area behind a house where the police found him shortly thereafter (app. 341). Butler suffered gunshot wound injuries to his groin and leg (app. 343).

According to Mr. Butler and Mr. Dingle, the petitioner was the only person at the scene with a gun (app. 345, 383). Mr. Dingle testified that the petitioner and Mr. Keith came up to him and his friends and that the petitioner pointed his gun and said "LET ME GET THAT, REESE" (app. 378). The petitioner then mumbled something that Mr. Dingle could not hear and started firing his gun (app. 378). Mr. Dingle testified he thought the petitioner was trying to rob him (app. 378).

Mr. Burroughs testified that the petitioner was asking the group questions. Then Mr. Burroughs looked back and the petitioner "ALREADY HAD A GUN OUT AND STUFF. A FEW MINUTES AFTER THAT IT WAS LIKE SECONDS THERE WAS LIKE SHOOTING AFTER THAT" (app. 253). Burroughs also testified that the petitioner said he should shoot them for what they had done to him (the petitioner) in the graveyard (app. 254).

Ceante Harvin testified that he was coming up the street on his bike when he saw Mr. Dingle, Mr. Keith, Mr. Butler, Mr. Burroughs, and the petitioner. He saw the petitioner in the middle of the street pointing a gun toward a mailbox (app. 237). Mr. Harvin testified he saw the petitioner fire a shot (app. 242).

The police arrived at the scene and found Mr. Foster shot in the head on his bicycle and Mr. Butler shot in the groin lying behind a nearby house. The police found three 9-millimeter casings on the ground (app. 98). Tests showed that only Mr. Harvin had gunshot residue on his hands. Residue tests were not done on Mr. Foster (app. 100–03, 110). No weapons were recovered. The bullet from Mr. Foster's body was identified as a medium size caliber, not a .25 (app. 117). The police arrested the petitioner and his girlfriend shortly after the incident (app.139). The petitioner gave the police a statement on

3

the morning of May 20, 2003 (app. 176). In the statement, which was "read into" the record at trial, the petitioner stated that he and Mr. Keith had planned to rob Mr. Dingle of drugs and guns (app. 176–77). The petitioner stated that when he reached for his gun, Mr. Dingle began "busting his gun." Mr. Foster then fell. Then the petitioner began firing his weapon and shot at least twice. He stated that Mr. Dingle shot Mr. Foster, but he blamed himself because of his attempted robbery (app. 176).

According to police, the petitioner gave a second statement in which he said that he was in the same gang as the men gathered at the scene, except for Mr. Dingle. Mr. Keith and Mr. Dingle apparently had some sort of dispute, and Mr. Dingle went for his gun and Mr. Keith started shooting his 9-millimeter gun. Mr. Foster apparently took a bullet that Mr. Dingle intended for the petitioner. The petitioner fired a couple of shots as he ran up the street. He stated that everyone had a gun, including Mr. Foster (app. 420). He stated he believed he had shot Mr. Butler (app. 421).

The petitioner's girlfriend, Angeletia Melton, also gave a statement to police. Ms. Melton was killed before the trial, but the judge allowed her statement into evidence at trial as a statement against interest (app. 183, 196–97). In the statement, she told the police that she dropped off the petitioner and Mr. Keith to buy some drugs from Mr. Dingle while she waited nearby. She said she heard gun shots, and then the petitioner came toward the car "running and ducking like he was running from bullets" (app. 202). The petitioner stated that he thought he was hit (app. 202). She checked him over and brought him to the car. By the time she got back, Mr. Keith was in the back seat holding a black 9-millimeter gun (app. 199, 202). Mr. Keith said that Mr. Dingle was shooting at them (app. 202).

The petitioner testified at trial that he had a .25 caliber weapon when he went to the street in Sumter that day and hung out with Mr. Dingle, Mr. Burroughs, Mr. Butler, Mr. Foster, and Mr. Keith (app. 465, 467). They were all using illegal drugs, and they all had

4

guns (app. 466–67). The petitioner further testified that Mr. Dingle drew his pistol, and the petitioner tried to stop him (app. 472). He denied trying to rob Mr. Dingle (app. 479). After Mr. Dingle fired first, Mr. Keith went for his weapon, and everybody started shooting, including the petitioner (app. 476). The petitioner testified that he saw Mr. Foster fall when Mr. Dingle began shooting (app. 480). He ran from the scene, shooting and ducking bullets (app. 489). A couple of days later, the petitioner was served with an arrest warrant for murder (app. 490).

### Direct Appeal

The petitioner timely served and filed a Notice of Appeal. Assistant Appellate Defender Eleanor Duffy Cleary initially represented him on appeal. On February 21, 2007, Ms. Cleary filed an Initial *Anders* Brief of Appellant on the petitioner's behalf and petitioned to be relieved as counsel. *See Anders v. California*, 386 U.S. 738 (1967). The Initial *Anders* Brief presented the following issue:

> Did the trial judge err in failing to charge the jury that it could find Appellant guilty of the lesser included offense of voluntary manslaughter when there was evidence that the shootings occurred in a sudden heat of passion upon sufficient legal provocation?

(Doc. 15-9, initial *Anders* brief at 3).

On September 15, 2008, the South Carolina Court of Appeals filed an order denying counsel's petition and directing the parties to brief the following issue:

> Did the circuit court err in allowing Wilson's juvenile record to be published to the jury without first receiving an order from the family court judge?

(Doc. 15-10, S.C. Ct. App. letter and order 2).

The petitioner, through Acting Chief Appellate defender Robert M. Dudek, filed his Brief of Appellant on March 13, 2009 (doc. 15-11). The State filed a Brief of Respondent on May 13, 2009 (doc. 15-12). On December 14, 2009, the South Carolina

Court of Appeals filed an opinion affirming the petitioner's convictions and sentence (doc. 15-13). *State v. Harold Jamar Wilson*, 2009-UP-588 (S.C. Ct. App. Dec. 14, 2009). The Remittitur was sent to the Sumter County Clerk of Court on December 30, 2009 (doc. 15-14).

***PCR***

The petitioner filed a *pro se* Post-Conviction Relief ("PCR") Application (Case No. 2010-CP-43-0976) on May 10, 2010 (app. 630–41). He alleged the following grounds for relief in his application:

> 1. Ineffective assistance of counsel:
>
> a. Failed to object to solicitor's statement in his closing that "... witness, Ms. Earp. The girl that stayed next door and her· testimony and quite frankly she made a good impression on me ...." See Trial Transcript p. 545, lines 4-6, in effect vouching for the credibility of the State's witnesses.
>
> b. Failed to object to solicitor's statement in his closing introducing into the trial assertions which were not introduced or proven by evidence during trial, that all casings (bullets) were found. See Trial Transcript p. 547, lines 15-24.
>
> c. Failed to object to trial judge's instruction to the jury, "so if you have a reasonable doubt as to whether or not the defendant has made out his defenses ...." See Trial Transcript p. 559, lines 16-18, in effect shifting the burden of proof to Applicant to prove his innocence."
>
> d. Failed to object to trial judge's instruction to the jury, the elements of the crime of larceny. See Trial Transcript p. 571, lines 9-23. Applicant was not charged or indicted for the crime of Larceny, … nor was Larceny presented to the jury as a lesser included offense of Attempted Armed Robbery ....
>
> e. Failed to request the trial court to instruct the jury that the evidence which was introduced of Applicant's prior juvenile convictions, was admissible only for impeachment purposes.
>
> f. Failed to properly acquaint (investigate) himself with the current and correct law and Facts surrounding Applicant's case, and as a result Applicant's trial counsel made a prejudicial error in the assessment of both the law and the facts concerning the

6

admissibility of Applicant's prior juvenile records (convictions) as evidence during his trial. See Trial Transcript p. 446, lines 2-23; p. 453, line 25; and p. 454, lines 1-10 .... [T]rial counsel was not aware of these changes in S.C. Law, and relied upon … outdated and repealed S.C. Code of Law to argue against the admissibility of Applicant's prior juvenile records ....

g. Failed to challenge the sufficiency of Count One - Murder of the Indictment No. 2003-08-43-0763, wherein it fails to state the section of the S.C. Code of Law that was violated.

2. Denial of a Fair Trial.

a. The trial judge instructed the jury "So if you have a reasonable doubt as to whether or not the defendant has made out his defenses ..." See Trial Transcript p. 559, lines 16-18, shifting the burden of proof to Applicant to prove his innocence.

b. Trial court erred in instructing jury on "hand of one, hand of all" because Applicant was tried as a principal.

c. Trial court erred in instructing the jury on larceny because Applicant was not charged with larceny.

d. Trial court failed to give limiting instructions on admissibility of prior juvenile record.

(App. 630–41). The State made its Return on February 17, 2011 (app. 642–47).

The Honorable W. Jeffrey Young, South Carolina Circuit Judge, held an evidentiary hearing into the matter on September 19, 2012, at the Sumter County Courthouse. The petitioner was present at the hearing with his PCR attorney Charles T. Brooks, III. Assistant Attorney General Megan E. Harrigan represented the State. The petitioner testified on his own behalf, while the State presented the testimony of trial counsel, Mr. Blackmon (app. 648–84).

Judge Young denied relief and dismissed the application *with prejudice* in an Order of Dismissal filed on November 27, 2012. The Order of Dismissal addressed the petitioner's claims that (1) counsel was ineffective for failing to object to Assistant Solicitor Conner's statement during the State's closing argument that State's witness Alexis Earp, a

neighbor who heard the shooting and called the police, "quite frankly … made a good impression on me," since this remark amounted to improper vouching; (2)  counsel was ineffective for failing to object to the Solicitor's statement in his closing argument about matters that were not introduced or proven by evidence during trial; (3)  counsel was ineffective for failing to object to the trial court's jury instructions on the elements of larceny within the court's charge on attempted armed robbery, since the petitioner was not charged with larceny and larceny is not a lesser included offense of attempted armed robbery; (4)  counsel was ineffective for not objecting to trial court's failure to include an instruction that the petitioner's prior juvenile convictions were only admissible for impeachment purposes; (5)  counsel was ineffective for failing to properly investigate and acquaint himself with the current and correct law and facts surrounding the admissibility of the petitioner's prior juvenile convictions; (6)  counsel was ineffective for failing to challenge the sufficiency of count one of the indictment (2003-GS-43-0763), where it failed "to state the section of the S. C. Code of Law that was violated."

The PCR court's order also addressed the petitioner's allegations that he was deprived of a fair trial because (1)  the trial judge instructed the jury "So if you have a reasonable doubt as to whether or not the defendant has made out his defenses ..."; (2)  the trial judge erred by instructing the jury on the "hand of one, is the hand of all" because the petitioner was tried as a principal; (3)  the trial judge "erred in instructing the jury on larceny because [the petitioner] was not charged with larceny; and (4)  the trial judge "failed to give limiting instructions on [the] admissibility of [the petitioner's] prior juvenile record" (app. 686–96).

### PCR Appeal

The petitioner timely filed a Notice of Appeal.  On appeal, the petitioner was represented by Assistant Appellate Defender Robert M. Pachak.  On September 10, 2013, Mr. Pachak filed a *Johnson* petition for writ of certiorari on the petitioner's behalf and

8

petitioned to be relieved as counsel (doc. 15-16). *See Johnson v. State*, 364 S.E.2d 201, 201 (S.C. 1988) (*per curiam*) ("This Court has approved the withdrawal of counsel in meritless post-conviction appeals, provided the procedures outlined in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), were followed.").   The sole issue presented in the *Johnson* petition was stated as follows:

> Whether trial counsel was ineffective in failing to object to the part of the solicitor's closing argument that vouched for the credibility of a State's witness?

(Doc. 15-16, pet. for writ of cert. at 2).  The petitioner did not file a *pro se* response to the *Johnson* petition.  The South Carolina Supreme Court filed an Order denying certiorari on August 21, 2014 (doc. 15-17).  The Remittitur was sent to the Sumter County Clerk of Court on September 8, 2014 (doc. 15-18).

## FEDERAL PETITION

On November 5, 2014, the petitioner filed his § 2254 petition (doc. 1).   On February 5, 2015, the respondent filed a motion for summary judgment (doc. 16).  By order filed on February 6, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the motion (doc. 17).   On March 6, 2015, the petitioner filed his response in opposition (doc. 19).

In his federal habeas petition, the petitioner makes the following claims:

**GROUND ONE:** Ineffective Assistance of Counsel

**SUPPORTING FACTS**:  Petitioner Trial Counsel Richard A. Blackmon was Ineffective when he:

A. Failed to object to Solicitor's statement in his closing that ". . . witness, Ms. Earp. The girl that stayed next door, and her testimony, and quite frankly She made good impression on me . . ." See Trial Transcript p. 545, line 4-6, in effect vouching for the credibility of the [state's] witness.

B. Failed to object to Solicitor's statement in his closing introducing into the trial assertions which were not introduced or proven by evidence during trial, that all casings (bullets) were found. See Trial Transcript p. 547, lines 15-24.

C. Failed to object to trial Judge's instruction to the jury "so if you have a reasonable as to whether or not the defendant has made out his defenses . . .", See Trial Transcript p. 559, lines 16-18, in effect Shifting the burden of proof to Petitioner to prove his innocence.

D. Failed to object to trial Judge's instruction to the jury, the elements of the Crime of Larceny. See Trial Transcript p. 571, lines 9-23. Petitioner was not charged or indicted for the crime of Larceny, and nor was Larceny present to the Jury as a lesser included offense of Attempted Armed Robbery. Such instructions to the Jury violated petitioner constitutional right not be subject to prosecution of a crime which one has not been indicted, and such instructions was followed by the Jury, and contributed to the verdict of guilty.

E. Failed to request the trial court to instruct the jury that the evidence which was introduced of Petitioner prior juvenile convictions, was admissible only for impeachment purposes.

F. Failed to properly acquaint (investigate) himself with the current, and correct law, and facts surrounding Petitioner case, and as a result Petitioner trial counsel made a prejudicial error in the assessment of both the law, and the facts concerning the admissibility of Petitioner prior juvenile records (convictions) as evidence during his trial. See Trial Transcript p. 446, lines 2-23; p. 452, lines 25; and p. 454, lines 1-10. Had Mr. Blackmon property prepared himself concerning the current, and correct law, as it related to the admission of a defendant's Prior Juvenile Convictions into an adult trial, he would have known of the changes in the S.C. Code of Law. Petitioner trial counsel relied upon outdated S.C. Code of Law § 20-780, which were repealed in 1996, and replaced by S.C. Code of Law Ann. §§ 29-7-8510, and 20-7-8515 which were the current, correct, relevant sections of the S.C. Code of Law in November of 2004, as it related to the admissibility of a defendant's prior juvenile records into an adult trial. Petitioner trial counsel was not aware of these changes in S.C. Law, and relied upon outdated and repealed S.C. Code of Law to argue against the admissibility of petitioner prior juvenile records, clearly demonstrating that petitioner trial counsel failed to properly investigate and/or adequately prepare to defend Petitioner at trial. Such failure prejudiced the outcome of Petitioner trial.

G. Failed to challenge the sufficiency of count one murder of the indictment no. 2003-GS-43-0763, wherein it fails to state the section of S.C. Code of Law which was violated.

10

Based on the foregoing grounds, Petitioner trial counsel Richard A. Blackmon's Representation feel below an objective Standard of Reasonableness, and but for Mr. Blackmon's errors stated herein, there is a reasonable probability that the result at Petitioner trial would have been different.

**GROUND TWO:** Denial of a Fair Trial.

**SUPPORTING FACTS:** Petitioner was Denied a fair Trial when:

A. The trial judge instructed the Jury So if you have a reasonable doubt as to whether or not the defendant has made out his defenses . . .", See Trial Transcript p. 559, line 16-18, shifting the burden of Proof to Petitioner to prove his Innocence.

B. The trial Judge instructed the jury on "hand of one hand of all" doctrine, when petitioner was the only defendant, on trial under indictment No. 2003-GS-43-0763. See Trial Transcript p. 574, lines 19-25; p. 575, lines 1-7; p. 577, lines 11-25; p. 578, lines 1-5; p. 584, lines 5-18; p. 585, lines 17-25; p. 586, lines 1-25; p. 587, lines 1-3; under the "hand of one hand of all" doctrine, the defendant which is on trial and such instruction is given to his Jury, the defendant must be charged as the accessory to the principal committer of the crime. Petitioner was indicted and being tried as the principal committer of the crimes charged in the indictment, and by the trial judge instructing the Jury under the "hand of one hand of all" doctrine at Petitioner trial, the trial judge essentially instructed the Jury that Petitioner was being tried as the principal committer and as the accessory to the crimes charged in the indictment. Under such instructions Petitioner was clearly denied a fair trial.

C. The trial Judge instructed the Jury on the elements of the crime of Larceny. See Trial Transcript p. 571m lines 9-23. A crime for which Petitioner was not indicted, and which was not presented to the Jury as a lesser included offense of Attempted Armed Robbery, The trial Judge in effect subjected Petitioner to prosecution of a crime to which he was not indicted or tried, violating Petitioner constitutional right to a fair trial under Article 1s11 [*sic*] of the S.C. Constitution, and the Fifth Amendment of the U.S. Constitution.

D. The trial Judge failed to give limiting instructions to the Jury that evidence of Petitioner Prior Juvenile conviction was admissible only for impeachment purposes, and by failing to do so, the Jury may have concluded that because his prior Juvenile conviction was also for Robbery, Petitioner also committed the crimes charged in the indictment because he has demonstrated a prior criminal tendency.

Based on the foregoing grounds, Petitioner was denied a fair trial in violation of his constitutional rights protected under the S.C. and U.S. Constitutions.

11

>   **GROUND THREE:**   Trial Court was without Jurisdiction to impose Sentence.
>
>   **SUPPORTING FACTS:**  The trial court sentence petitioner to five years for possession of a firearm during commission of crime of violence when he was sentence to Life.

(Doc. 1, pet. at 5–8, 11–13).

## APPLICABLE LAW AND ANALYSIS

### Summary Judgment Standard

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365

(4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Exhaustion

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17-27-10,-90; *Blakeley v. Rabon,* 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[2]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the United States Court of Appeals for the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

The petitioner timely pursued and exhausted his direct appeal remedies. *See generally* Rule 203(b)(2), SCACR (setting a ten day limit in which to appeal after sentence). He has no direct appeal remedies still available to him in state court. He has also pursued and technically exhausted his PCR remedies in his PCR action as a matter of right. *See* S.C. Code Ann. § 17-27-90 ("All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. . . .").

Here, the petitioner's § 2254 petition presents seven claims of ineffective assistance of trial counsel (Ground One); four claims of trial judge error that deprived him of a fair trial (Ground Two), and a claim that the circuit court lacked jurisdiction (Ground Three). Of his various claims, he exhausted his claim in Ground One that counsel was ineffective for not objecting to the Assistant Solicitor's statement in closing argument because it was presented to the Supreme Court of South Carolina in the *Johnson* petition for writ of certiorari (Ground One(A)). None of his remaining claims of ineffective assistance of counsel were exhausted.

14

The petitioner also did not exhaust any of his claims of trial court error in Ground Two or his jurisdictional claim in Ground Three.  Ground Three was never presented in a state court.  The petitioner does not have any state court remedies available to him because any future PCR application would be barred as successive under S.C. Code Ann. § 17-27-90 (1985) and *Aice v. State,* 409 S.E.2d 392, 395 (S.C. 1991) ("We have held that the PCR rules 'contemplate an adjudication on the merits of the original petition, one bite at the apple as it were.'"), and because any future PCR application would be untimely under the one-year statute of limitations that governs the filing of PCR actions, S.C. Code Ann. § 17-27-45(A) (Supp. 2015).  Therefore, the exhaustion requirement is technically satisfied.

***Procedural Bar***

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts.  In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or an application for PCR and the deadlines for filing have passed, he or she is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. at 750). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the Supreme Court of the United States carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [501 U.S. at 754–55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

16

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21).  The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

The respondent argues that portions of each of the grounds for relief alleged by the petitioner are procedurally barred, as will be discussed below.

***Ground One***

In Ground One, the petitioner asserts seven claims of ineffective assistance of counsel.  All but the first of these claims is procedurally defaulted.  In his second claim of ineffective assistance of counsel (Ground One(B)), the petitioner claims his counsel was ineffective for failing to object to the Assistant Solicitor's comments about ballistic evidence during his closing argument (doc. 1, pet. at 6).  Specifically, the petitioner contends the following portion of the Assistant Solicitor's closing was improper and prejudicial:

> NOW, WILSON WOULD MAKE YOU THINK IT WAS LIKE WORLD WAR 2 OVER THERE.   EVERYBODY WAS SHOOTING ALL OF A SUDDEN AT ONE TIME AND WAS JUST HUNDREDS OF SHOTS BUT I TELL YOU ANOTHER THING, THE POLICE FOUND THREE HULLS. NOW, I'M NOT GONNA STAND HERE AND TELL YOU THEY FOUND EVERY HULL AND EVERY CASING OUT THERE BECAUSE THESE LITTLE OLD CASINGS FALL ON THE GROUND ... IF THEY FALL ON THE GROUND, FALL OUT THERE ON THE PAVEMENT THEY'RE PRETTY EASY TO SEE. BUT IF THEY FALL ON THE GROUND AND SOMEBODY STEPS ON ONE OF THEM AND IT DISAPPEARS PRETTY EASILY BECAUSE ITS ... ITS ... YOU CAN TAKE THEM OUT OF THE CONTAINER THERE AND YOU CAN SEE THAT IF SOMEBODY STEPPED ON ONE IT WOULD BE PRETTY EASY TO MASH INTO THE GROUND AND NOT BE VISIBLE. BUT THEY ... THEY DID A PRETTY THOROUGH JOB BECAUSE THAT'S THEIR JOB OF LOOKING FOR THEM AND

> THEY FOUND THREE AND ALL THOSE THREE CASINGS MATCHED. THEY WERE SHOOTING ... ACCORDING TO MR. PAAVEL FROM SLED, THEY WERE SHOT BY THE SAME GUN AND HE SAID IT WAS A NINE MILLIMETER PISTOL. THE BULLET THEY RECOVERED OFF THE GROUND AROUND THERE CAME OUT OF A NINE MILLIMETER PISTOL. THEY CAN'T EVEN ... HE CAN'T EVEN SAY THAT IT CAME OUT OF THESE CASINGS. IT'S THE ... IT'S THE NATURE OF THE SCIENCE, THEY DON'T HAVE THE ABILITY TO DO THAT. AND UNFORTUNATELY WE WERE NOT ABLE TO RECOVER THE PISTOL BECAUSE I WOULD EVEN SUBMIT TO YOU THAT SOMEBODY WHO'S USED A PISTOL IN SOMETHING LIKE THIS THEY WANT TO GET RID OF IT BECAUSE THEY DON'T WANT ... THEY DON'T WANT IT TO BE FOUND.

(App. 550).

The record of the PCR hearing reflects that the petitioner testified that he felt that this was ineffective assistance of counsel (app. 657). Before he was questioned about this specific claim, and responding to questioning about counsel's trial strategy and his cross-examination of prosecution witnesses, trial counsel testified:

> Q    Do you feel that during your cross examination of the state's witnesses, you were able to bring out inconsistencies of their testimony?
>
> A    Well it's not so much that there were a whole lot of inconsistencies. I believe that there were a few inconsistencies in what some of the witnesses who were in the neighborhood saw or heard on the day in question. But the biggest inconsistency that I believe we found was in the state's theory that it was Mr. Wilson's bullet from his gun that killed the young man. But the evidence that we believe came out was that the young man was killed from a shot that entered from behind his head, and the bullet that entered his head was tumbling when it entered his head. So the bullet had to pass through some other object before it hit him in the head. There was [*sic*] pictures and evidence that there was a mailbox that was right behind the young man that apparently had bullet holes in it.

18

And it was our opinion and it seemed clear to us that a bullet went through the mailbox, then [it] hit the young man from behind. Mr. Wilson was not behind him, he was in front and to the side further down the road. So a bullet that came from his gun could not possibly have killed [the victim] based on the evidence the coroner presented. And I thought that was inconsistent enough to raise sufficient probable cause.

(App. 669).

The record further reflects the following colloquy with trial counsel concerning this allegation:

Q   In regards to the solicitor's statement that all the bull -- shell bullet casings were found, did you see any reason to object to this?

A   No, ma'am. I mean the solicitor acknowledged that they didn't find all of the casings. But their [*sic*] casings if they fall on the ground, or they could be stepped on and disappear pretty easy.  His only point was that they did find three casings, and that the three casings that they did find, all matched and were all shot by the same gun being a 9 millimeter.  But there was no evidence and testimony to specifically tie those three casings that were found amongst all the others that were found, to a gun that was held by Mr. Wilson. I didn't find any reason to object to that either.

(App. 673).

On cross-examination, PCR counsel and trial counsel had the following exchange:

Q   Now I heard you talk a little earlier about shell casings. Some shell casings were picked up. Some of them weren't. Something of that nature.

A   Yes, sir.

Q   You didn't -- did you consult a ballistic's expert in this case?

A   I didn't need to. I didn't feel there was a need to, because there was no gun that Mr. Wilson was found with.  No

19

> gun that was found with his fingerprints on [it]. And no gun that was identified as having been in the possession that was tied to any of the casings that were found anywhere.
>
> Q    Okay.
>
> A    And the bullet or part of the fragments of the bullet, as I recall, that were recovered that killed the young man, none of those or none of any of them had his fingerprints on them. There was no testimony to that effect.

(App. 679–80).

The petitioner cannot show either deficient performance or prejudice from counsel's failure to object to the Assistant Solicitor's challenged remarks because the comments did not deprive him of a fair trial. To the contrary, counsel correctly understood this portion of the Assistant Solicitor's argument to be a fair comment on the evidence that was before the jury. Moreover, the trial judge had admonished jurors in his opening comments explaining the trial process that the arguments of counsel were not evidence. (app. 65). In light of the overwhelming evidence of guilt, there can be no prejudice under *Strickland* from the failure to object because the challenged comments did not deprive the petitioner of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643–46 (1974) (federal habeas petitioner is not entitled to relief based upon the closing argument of a prosecutor, unless that argument so infected the trial with unfairness as to make the resulting conviction a denial of due process)

This allegation is procedurally barred because, although it was presented to and rejected by the state PCR judge (app. 691), the petitioner did not challenge this adverse ruling in the petition for writ of certiorari in the appeal of the PCR case. The procedural default of this claim can only be excused if the petitioner can demonstrate both cause for the procedural default and prejudice as a result of the alleged constitutional violation, or if he can demonstrate that failure to review the constitutional claim will result in a fundamental

20

miscarriage of justice. *Coleman*, 501 U.S. at 749–50.  A claim of ineffective assistance of PCR appellate counsel cannot constitute cause to excuse the default of these grounds. *Coleman*, 501 U.S. at 757 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas."); *see also Martinez*, 132 S.Ct. at 1319–20 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Coleman* governs in all but the limited circumstances recognized here.").  The petitioner fails to show cause in that he has not shown "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Moreover, the petitioner cannot show prejudice from the procedural default of this claim because it lacks merit, as discussed above, under *Strickland*.

In his third claim (Ground One(C)), the petitioner contends that counsel was ineffective because he did not object to the trial judge's following instruction to the jury: "[S]o if you have a reasonable doubt as to whether or not the defendant has made out his defenses .... " (app. 562).  The petitioner contends that this part of the charge "in effect shift[ed] the burden of proof to [the petitioner] to prove his innocence" (doc. 1, pet. at 6). This claim is also procedurally defaulted as the petitioner did not raise it in his appeal of the PCR court's decision, and for the reasons set forth above, he cannot show cause for the default.

The PCR court rejected this allegation finding that "Counsel testified that although the specific passage noted by Applicant could be read as placing a burden on the defendant, jury instructions must be read as a whole, and that when he looked at the jury charge as a whole, the trial court did not shift the burden [of proof] to the defendant or confuse the jury.  Counsel testified that the jury charge clearly instructed the jury that the

21

State had the burden of proof. Counsel stated that he did not and does not believe that the jury charge was objectionable or prejudicial to his client" (app. 691). Based upon these findings, the PCR court found that counsel's performance was not deficient and that the petitioner had not been prejudiced the failure to object because, when the charge was viewed as a whole, it was not objectionable (app. 691–92). Again, the petitioner has not proven that counsel's failure to object was deficient performance or prejudicial under *Strickland*, and procedural default of this claim cannot be excused on the basis of ineffective assistance of PCR appellate counsel.

In his fourth claim of ineffective assistance of counsel (Ground One(D)), the petitioner contends that counsel was ineffective for failing to object to the trial court's instructions regarding the elements of larceny (doc. 1, pet. at 6). This claim is also procedurally defaulted under *Coleman*, 501 U.S. at 729–32. As with the preceding claims, this allegation was presented to and rejected by the state PCR judge (app. 692–93). However, it is procedurally defaulted because the ruling was not challenged on certiorari. *Coleman*, 501 U.S. at 729–32; *see also Kornahrens v. Evatt*, 66 F.3d 1359, 1362 (4th Cir. 1995) (even under *in favorem vitae* review, an inmate's claim is procedurally barred unless specifically raised to the state supreme court).

The petitioner testified at the PCR hearing that his trial attorney should have objected to the following portion of the trial court's instruction on larceny because larceny is not a lesser included offense of attempted armed robbery:

> . . . I'M FIRST GOING TO DEFINE FOR YOU THE CRIME [OF] LARCENY BECAUSE LARCENY IS EMBRACED WITHIN ROBBERY AND ARMED ROBBERY IS THE AGGRAVATION OF THE CRIME OF ROBBERY. LARCENY IS THE FELONIOUS TAKING AND CARRYING AWAY BY ANY PERSON OF GOODS OR PERSONAL PROPERTY OF ANOTHER WITH FELONIOUS INTENT TO PERMANENTLY DEPRIVE THE OWNER OF THIS PROPERTY AND TO CONVERT IT TO THE TAKER'S OWN USE. THE ESSENTIAL ELEMENTS OF THE CRIME OF LARCENY WHICH IS

22

> ORDINARILY CALLED STEALING ARE ONE, ONE IS TAKING INTO POSSESSION THE PERSONAL PROPERTY OF ANOTHER. TWO, [IS] THE CARRYING AWAY AND REMOVAL OF THE PERSONAL PROPERTY. THREE, THE FELONIOUS INTENT, THE INTENT TO STEAL ON THE PART OF THE TAKER TO PERMANENTLY DEPRIVE THE OWNER OF THE PERSONAL PROPERTY AND TO CONVERT TO PROPERTY TO THE TAKER'S OWN USE. . . .

(App. 574). At the PCR hearing, the petitioner testified that counsel's failure to object was ineffective because he was not charged with larceny and larceny was not instructed as a lesser-included offense of attempted armed robbery (app. 658).

Trial counsel testified that he did not object to the instruction because the trial judge was using the larceny instruction in explaining the meaning of robbery:

> Q    And this instruction is in regards to the trial judge's instruction on the charge of larceny, and that you were ineffective for failing to object to this.
>
> A    Okay.
>
> Q    Is larceny in your professional opinion usually charged in regards to armed robbery?
>
> Q    Larceny per se is not in fact, you know, I am reading he is charging larceny. Mr. Wilson is not charged with larceny. And he was not indicted for larceny. Larceny is not a lesser included offense. But the judge did not appear to me to be charging the jury larceny for the purpose of giving them an option of finding him guilty of larceny. He was charging larceny, apparently it appeared to me anyway, because he wanted to use the definitions of what larceny was to tie into what robbery is.
>
> Robbery tends to be a common law kind of crime. There's a statue [*sic*] that says if you are guilty of robbery this is what [you] get. But the statute is not as clear on I think all the other ones. So he was basically telling the jury what a robbery was and consisted of things like a larceny. But [the trial judge was] not telling the jury they could find Mr. Wilson guilty of larceny either as a lesser included offense or anything like that.

> So no, I didn't see any reason to object to anything like that.
>
> Q    In your experience as a trial attorney if you feel that the judge is mischarging the jury in your client's case, it is your standard practice to make an objection?
>
> A    Yes, ma'am.
>
> Q    And you do not feel that this larceny within the jury charge on page 571 was prejudicial to your client?
>
> A    I don't think so.

(App. 675–76).  Counsel's standard practice is to object to erroneous jury instructions, but this was not a prejudicial instruction (app. 676).

The PCR court found that trial counsel's testimony was credible and that the petitioner's testimony was not credible (app. 689).  The PCR judge thereafter rejected this allegation finding that counsel was not deficient for not objecting to this portion of the charge regarding larceny as it was not objectionable when viewed with the entirety of the trial court's jury instructions.  The PCR court further found that the petitioner failed to prove that he was prejudiced by this alleged deficiency of counsel and dismissed the claim of ineffective assistance of counsel (app. 692–93).  The petitioner cannot show cause for the procedural default, *see Martinez*, 132 S.Ct. at 1319–20 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Coleman* governs in all but the limited circumstances recognized here."), and the petitioner cannot show prejudice because the state court's decision was a reasonable application of the standards of the *Strickland* case.

The petitioner's fifth and sixth allegations of ineffective assistance of counsel are claims concerning his prior juvenile record (Grounds One(E) and (F)).  Specifically, he claims that counsel was ineffective for not objecting to the trial court's omission of a limiting

24

instruction stating that the petitioner's prior juvenile conviction was only admissible for impeachment purposes.  He also claims counsel failed to adequately investigate the petitioner's juvenile record and argue against its admissibility (doc. 1, pet. at 7).  These claims are also procedurally defaulted as they were not raised in the PCR appeal, and the petitioner cannot demonstrate cause for the procedural default nor how he was prejudiced as a result.

During the petitioner's trial, the issue of his criminal record came up during his colloquy with the court regarding his right to testify (app. 441–59).  The petitioner was advised that the state could use certain criminal convictions to impeach his testimony should he decide to testify.  The state advised the court that they intended to use his convictions from juvenile court for common law robbery and burglary second degree from June 18, 2001 (app. 444-45).  Trial counsel argued vigorously that these convictions were not admissible because they did not carry more than a one year term of imprisonment under South Carolina Rule of Evidence 609. The court rejected this assertion.  Counsel also argued that the juvenile records were confidential under S.C. Code Ann. § 20-7-780 (1985) and there had not been an order releasing the record (app. 445-47).  Finally, counsel argued that the prejudice in introducing these records outweighed their probative value because the crimes were similar to those for which he was being tried (app. 450).

The trial court overruled counsel's objections and found that the juvenile records were admissible concluding that the two crimes met the requirements of Rules 609(a), 609(b), and 609(d) of the South Carolina Rules of Evidence and that the probative value of the convictions outweighed their prejudicial effect.  The court stated it would issue an order directing release of the juvenile records if there was an issue with respect to obtaining them (app. 450–55).  The petitioner's counsel followed up with two motions to suppress the juvenile records (app. 452, 458, 461).  The trial court denied the motions, concluding that the Children's Code does not prohibit an inquiry into a juvenile record when

25

it meets the requirements of evidence (app. 460). Subsequently, the petitioner testified on his own behalf and was cross-examined about the juvenile convictions (app. 492). At the close of the defense case, counsel moved for mistrial based on improper admission of the criminal record. The motion was denied, and the trial court maintained that the record was properly admitted (app. 521).

The issue of admission of the petitioner's juvenile criminal record was the sole issued raised on direct appeal. In affirming the trial court, the South Carolina Court of Appeals stated with regard to juvenile records:

> We affirm pursuant to Rule 220(b), SCACR and the following authorities: S.C. Code Ann. § 20-7-8515(D) (Supp. 2004) ("Law enforcement information or records of children created pursuant to the provisions of this article may be shared among . . . solicitors' offices . . . for criminal justice purposes without a court order.") (emphasis added); S.C. Code Ann. § 20-7-8510(G) (Supp. 2004) ("The department or the South Carolina Law Enforcement Division, or both, must provide to . . . a solicitor . . . upon request, a copy of a child offense history for criminal justice purposes. This information must not be disseminated except as authorized in Section 20-7-8515."); S.C. Code Ann. § 20-7-8510(H) ("Other information retained by the department may be provided to . . . a solicitor . . . pursuant to an ongoing criminal investigation or prosecution."); and Rule 609(d), SCRE, ("Evidence of a juvenile adjudication is admissible under this rule if conviction of the crime would be admissible to attack the credibility of an adult.").

(Doc. 15-13). *State v. Harold Jamar Wilson*, 2009-UP-588 (S.C. Ct. App. Dec. 14, 2009).

At the PCR hearing, the petitioner testified that the State attempted to impeach him with prior convictions from when he was a juvenile. "And the judge failed to give a limit[ing] instruction that my juvenile conviction [was] only introduce[d] … for impeachment reasons. My trial attorney failed to object to that, because they were improperly introducing evidence that to make the jury believe that I probably, do a probable history, because my juvenile conviction is for armed robbery" (app. 52).

26

The petitioner felt that trial counsel should have objected to the introduction of his convictions. However, he acknowledged that counsel had, in fact, moved to exclude his prior convictions but claimed that counsel argued the "wrong" law (app. 652–53, 661–62, 664, 655–56). Although the petitioner complained of counsel's failure to investigate, he did not offer testimony in support of his contention (app. 653; *see* doc. 1, pet. at 7).

Trial counsel testified that he had moved to exclude the prior juvenile convictions but that the trial judge denied his motion and allowed the convictions to be used for impeachment purposes. Although counsel conceded that "Mr. Wilson is right, I did cite the wrong statute," which had been repealed, he observed that the two statutes that replaced that provision and were in effect at the time of the trial "basically had the same verbatim wording in [them]." He explained that "our whole … basis for keeping the record out completely was, that it our reading of the law … [was] that the juvenile record could only be released upon order from the Family Court. And up to that point, they didn't have a Family Court order, so the record should not have been properly released" (app. 677-79).

Trial counsel felt that this ruling provided "a legitimate basis for a ground for appeal that should have been considered by the appropriate authorities on direct appeal" (app. 678). At the PCR hearing, trial counsel was not asked any questions about his failure to request a jury instruction limiting jurors' consideration of the petitioner's prior conviction in assessing the petitioner's credibility.

The PCR judge rejected both of the claims finding that counsel testified that he did not feel his client was prejudiced by this failure and the petitioner presented no evidence or testimony as to how this prejudiced him or affected his trial. The PCR court found that counsel was not ineffective and the petitioner was not prejudiced by the lack of a limiting instruction as there was overwhelming evidence of the petitioner's guilt. The allegations were denied dismissed *with prejudice* (app. 693–94).

27

Clearly, there was neither deficient performance nor prejudice resulting from counsel's failure to request a limiting instruction with regard to the petitioner's juvenile record. The petitioner has not advanced any basis for excluding these convictions from evidence separate from the argument counsel made at trial. Instead, he has merely complained of counsel's performance. This does not show prejudice. Finally, in light of the overwhelming evidence of guilt, there could not be any prejudice from counsel's failure to object because the challenged remarks could not have deprived the petitioner of a fair trial. *See Strickland*, 466 U.S. at 694  The PCR court reasonably applied *Strickland* in dismissing this claim, as there are plausible reasons for not objecting to the absence of a curative instruction. The most obvious rationale for not requesting a limiting instruction, having lost on the question of admissibility, is for counsel to make a tactical decision to forego the instruction to avoid further focus of the jury's attention on the unfavorable use that could be made of the evidence. *See Owens v. Warden of Perry Correctional Inst.*, C.A. No. 5:14-cv-03685-RBH, 2015 WL 3871195, at *20 (D.S.C. June 23, 2015) ("Additionally, it has been stated that often 'seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.'") (two internal quotation marks omitted). With respect to a habeas court's after-the-fact analysis of trial strategy, the United States Supreme Court has stated, "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The Supreme Court also noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

28

The United States Court of Appeals for the Fourth Circuit has also held that deference will be given to a trial counsel's reasonable or plausible strategic decisions, particularly where there is no clear showing of prejudice to a petitioner from such strategy. *See Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) ("Therefore, '[t]he best course for a federal habeas court is to credit plausible strategic judgments.' To do otherwise would be a transparent misuse of the habeas court's power of hindsight.")(citations omitted); and *Curry v. Warden*, C.A. No. 6:07-2933-HFF-WMC, 2008 WL 3887648, at *11 (D.S.C. Aug. 21, 2008) (finding a petitioner was not entitled to habeas relief on claim of ineffective assistance of counsel for failure to object to prosecutor's statement in closing argument where counsel testified as to his strategic reasons for not objecting). *See also Sexton v. French*, 163 F.3d 874, 887 (4th Cir. 1998) ("[R]easonable tactical decisions by trial counsel in this regard are binding on the defendant")*; Bunch v. Thompson*, 949 F.2d 1354, 1364 (4th Cir. 1991) ("The best course for a federal habeas court is to credit plausible strategic judgments in the trial of a state case."); and *Fitzgerald v. Thompson*, 943 F.2d 463, 469 (4th Cir. 1991) ("We believe, on the contrary, that Fitzgerald's trial counsel made reasonable tactical decisions that should not now be second-guessed on collateral review. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. As trial counsel testified at the state habeas hearing, the omitted instructions were primarily cumulative of other instructions that were given to the jury. These other instructions properly informed the jury of the range of possible verdicts from capital murder to acquittal and admonished it as to the Commonwealth's burden of proof. Thus, this is not a case of the jury being misinformed by the absence of the challenged instructions."), which are pre-AEDPA cases evaluated under a less deferential standard of review.

Furthermore, the petitioner has failed to show how the failure to request a limiting instruction prejudiced him. *See Hamilton v. Warden, Lieber Correctional Inst.*, C.A. No. 5:13-2506-MGL-KDW, 2015 WL 251243, at *19 (D.S.C. Jan. 20, 2015) ("Because any

defense objection to the State's use of Petitioner's prior convictions would have been overruled, and because the trial court did, in fact, provide limiting instructions to the jury regarding the appropriate bounds of its consideration of that evidence, trial counsel's failure to request a curative instruction was not ineffective.  As a result, the undersigned finds that Petitioner has not shown that the PCR court's findings and conclusions were contrary to, or an unreasonable application of, the *Strickland* standard."), *appeal dismissed*, No. 15-6197, 602 F. App'x 136 (4th Cir. May 22, 2015).  Overwhelming evidence of guilt and the fact that he never denied being involved in the incident or firing a weapon (app. 693–94) are supported by the record.  The petitioner cannot rebut the presumption that these findings are correct by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  In light of these facts, and the trial judge's instructions that the jury could only convict if it found that the State had proved each element of the indicted offenses beyond a reasonable doubt, the petitioner cannot show prejudice resulting from counsel's failure to request a limiting instruction. Accordingly, the petitioner's procedural default of the claims regarding his juvenile convictions cannot be excused.

In his seventh and final claim of ineffective assistance (Ground One(G)), the petitioner claims that counsel was ineffective for failing to object to the sufficiency of the indictment for murder because it fails to state the section of the South Carolina Code that he violated (doc. 1, pet. at 8).  This ground is also procedurally defaulted because the petitioner failed to raise it in the appeal of his PCR.

The petitioner testified at PCR that the murder indictment failed to state the South Carolina Code section with which he had been charged and that counsel had failed to challenge the indictment at a pretrial proceeding (app. 658–59, 662).  Trial counsel testified, "I believe the indictment was sufficient at the minimum extent required in order to indictment [*sic*] him."  However, he moved to quash the indictment (app. 670).  The trial record reflects that the trial judge denied counsel's pretrial motion to quash all counts of the

30

indictment based upon the State's failure to comply with South Carolina Rule of Criminal Procedure 3(c), because the petitioner was not indicted within ninety days of his arrest. Trial counsel also moved to quash all counts other than murder because arrest warrants were not issued for those charges, but the trial judge denied the motion (app. 58–62).

The petitioner cannot show how the failure to challenge the sufficiency of the indictment was error under *Strickland* or any resulting prejudice because the petitioner had adequate notice of the charges against him and the indictment complied with South Carolina law (*see* app. 697–99). Under South Carolina law, an indictment is merely a notice document, and therefore there is no state law ground for an objection. The petitioner has never contended that he did not have notice that he was charged with murder. Moreover, deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief. *Ashford v. Evans*, 780 F.2d 405, 407 (4th Cir. 1985) ("Variances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process.").

Federal habeas relief is not available to alleged violations of state law. *See Wright v. Angelone*, 151 F.3d 151, 156–58 (4th Cir. 1998); *Chance v. Garrison*, 537 F.2d 1212, 1215 (4th Cir. 1976); and *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960), which hold that state law issues are not valid grounds for federal habeas corpus relief. Lack of subject matter jurisdiction by a Court of General Sessions is a state law ground. *See State v. Gentry*, 610 S.E.2d 494, 498–500 (S.C. 2005). The petitioner cannot obtain federal habeas corpus relief on a state law ground. *See Wright*, 151 F.3d at 156–58; *cf. Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Essentially, there is no alleged violation of *federal* law to review. See 28 U.S.C. § 2254(d)(1)

31

(application shall not be granted unless the claim was based on an improper application of federal law).

Accordingly, there was no legitimate ground upon which counsel could base an objection to the indictment, and the petitioner failed to prove either deficient performance or resulting prejudice under *Strickland* because *Strickland* does not impose a duty upon counsel to make to make a frivolous motion. *See, e.g., Almon v. United States*, 302 F. Supp. 2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable."); and *cf. Smith v. Padula*, 444 F. Supp.2d 531, 539 (D.S.C. 2006) ("In short, trial counsel cannot be ineffective for failing to make a meritless futile objection. Neither *Strickland* prong was satisfied, and no habeas relief should issue.").

### Ground Two

In Ground Two of his petition, the petitioner raises four claims of trial court error. Specifically, he alleges that (A) when the trial court instructed the jury regarding reasonable doubt (app. 559), the court shifted the burden of proof to the petitioner; (B) the trial court erred by instructing the jury on "the hand of the one is the hand of all" doctrine (app. 577–78); (C) the trial court erred by instructing the jury regarding the elements of larceny (app. 574); and (D) the trial court failed to give a limiting instruction regarding the admissibility of the petitioner's juvenile convictions (doc. 1, pet. at. 11–12). These issues were preserved for appellate review because they were ruled on by the PCR court (app. 695); however, they were not raised in the PCR appeal. The petitioner does not show cause for this procedural default nor does he argue how he was prejudiced. These claims should be dismissed.

The PCR court dismissed claims (A), (C), and (D) *with prejudice*, and found that that they were abandoned because the petitioner had not presented sufficient evidence or testimony with respect to each issue (app. 695). Since these were not appealed at the

32

next level, they have been waived and cannot be addressed on federal habeas review. As discussed above, the ineffective assistance of PCR appellate counsel does not constitute cause for the procedural default. *See Martinez*, 132 S.Ct. at 1319–20 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Coleman* governs in all but the limited circumstances recognized here.").

        With respect to claim (B) of Ground Two, the petitioner's accomplice liability claim, the PCR court found that it was procedurally barred, as it was not raised at the petitioner's direct appeal, and it was denied and dismissed *with prejudice* (app. 695). Post-conviction relief is not a substitute for a direct appeal. *Simmons v. State*, 215 S.E.2d 883, 885 (S.C. 1974). A PCR application cannot assert any issues that could have been raised at trial or on direct appeal. *Ashley v. State*, 196 S.E.2d 501, 502 (S.C. 1973).The record shows that trial counsel objected this charge on the "hand of one is the hand of all" (app. 577–78) at the conclusion of the trial court's instructions on the basis that there was no evidence to support it since the petitioner was alleged to have acted as a principal (app. 580). In response to a question from the jury, the trial court indicated that it would recharge on accomplice liability, and counsel renewed his objection (app. 587). The court gave the supplemental charge over the objection. Following this instruction, counsel moved for a mistrial, and the motion was denied (app. 588–90). Thus, both counsel's objection and the mistrial motion were preserved for appellate review, and this claim could have been raised on direct appeal. As a result, trial counsel was not ineffective, and the default cannot be excused.

### Ground Three

        In his final ground for relief, the petitioner claims the trial court had no jurisdiction to impose a five-year sentence for possession of a firearm during the commission

33

of a crime of violence when the petitioner was also sentenced to life in prison (doc. 1,pet. at 13).  This ground is also procedurally defaulted as this alleged violation of state law was never raised in state court, either as a claim of sentencing error at trial or on appeal or as an ineffectiveness claim in state PCR.  Furthermore, the five-year sentence is consecutive to the life sentence without parole; therefore, even if the sentence is vacated, it has no impact on the actual sentence served by the petitioner.  This claim fails and should be dismissed.

### *Merits*

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court
> proceedings, this Court will not issue a writ of habeas corpus
> under the AEDPA unless (a) the state court decision is in
> "square conflict" with Supreme Court precedent that is
> controlling as to law and fact or (b) if no such controlling
> decision exists, "the state court's resolution of a question of pure
> law rests upon an objectively unreasonable derivation of legal
> principles from the relevant [S]upreme [C]ourt precedents, or if
> its decision rests upon an objectively unreasonable application
> of established principles to new facts." *Green v. French*, 143
> F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is
> authorized only when the state courts have decided the question
> by interpreting or applying the relevant precedent in a manner
> that reasonable jurists would all agree is unreasonable." *Id.*
> When a petitioner has properly presented a claim to the state
> court but the state court has not adjudicated the claim on the
> merits, however, our review of questions of law and mixed
> questions of law and fact is *de novo*. *See Jones v. Jones*, 163
> F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo*
> standard of review to claims of ineffective assistance of counsel
> that were properly raised, but not adjudicated on merits in state
> court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by *Strickland* and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is
> "doubly" so. The *Strickland* standard is a general one, so the
> range of reasonable applications is substantial. Federal habeas
> courts must guard against the danger of equating

35

> unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

### Ground One(A)

The petitioner raises seven allegations of ineffective assistance in Ground One, and six of those claims have been procedurally defaulted as discussed above. The remaining claim (Ground One(A)) that counsel was ineffective for failing to object to vouching in the prosecutor's closing argument (doc. 1, pet. at 6) will be addressed on the merits. The petitioner claims trial counsel was ineffective for not objecting to the following comments made by the Assistant Solicitor during closing argument:

> NOW, LET'S TALK ABOUT ANOTHER WITNESS. MS. EARP. THE GIRL THAT STAYED NEXT DOOR AND HER TESTIMONY AND QUITE FRANKLY SHE MADE A GOOD IMPRESSION ON ME IN THAT SHE'S A ... SHE'S NOT PART OF THE CROWD THAT'S HANGING OUT THERE ON THE STREET. SHE'S AT TIIE UNIVERSITY OF SOUTH CAROLINA GETTING HERSELF AN EDUCATION AND SHE'S ... AND SHE'S HOME FOR A HOLIDAY OR A ... A WEEKEND OR WHATEVER IT WAS SHE WAS OFF FOR A FEW DAYS AND SHE'S BACK VISITING AT HOME, AND SHE HEARS SHE SAID TWO GUNSHOTS.

(App. 548).

As he did in his PCR application, the petitioner contends these remarks constituted improper vouching for the witness' credibility. In his response to the motion for summary judgment, the petitioner contends that the Assistant Solicitor's "summation led the jury to believe the Government corroborated the witness testimony before trial and found it to be credible" (doc. 19 at 4). The respondent submits that the state courts' rejection of the petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent under § 2254(d)(1). This court agrees.

36

Trial counsel testified at the PCR hearing that he "did not interpret or hear it as vouching for her credibility" when he heard the Assistant Solicitor's comment.  While in hindsight it might appear to be vouching, counsel's "impression then would have been then if you raise that issue, it would make it sound a lot worse to the jury [than] just brushing over it as I recall the solicitor doing when he was making this statement" (app. 672).  Trial counsel explained that the Assistant Solicitor "was [a] very slow spoken, drawing kind of individual, and he made that statement.  And he didn't slow down or pause…. He just [kept] going through the whole statement.  So it did not sound prejudicial to me.  And it didn't sound like to me that he was improperly bolstering her."  Trial counsel stated at the PCR hearing that his normal practice is to object to prejudicial comments in closing argument (app. 672).

In rejecting all of the issues raised in the PCR hearing, the PCR judge found that trial counsel's testimony was credible and that the petitioner's testimony was not credible (app. 689).  The PCR judge rejected this specific allegation as follows:

> Applicant alleged that Counsel was ineffective for failing to object to Assistant Solicitor Conner's statement during the State's closing argument regarding State's witness Alexis Earp, a neighbor who heard the shooting and called the police. Applicant asserts that Assistant Solicitor Conner's comment that "quite frankly she made a good impression on me" amounted to improper vouching and Counsel was ineffective for not objecting to such a comment.

> At the evidentiary hearing, Counsel testified that he did not believe that Assistant Solicitor Conner's statement amounted to vouching for the credibility of the State's witness and that is why he did not object.  Specifically, Counsel stated that the comment did not sound prejudicial or improper at the time of the trial and that he does not think that the comment is improper or prejudicial now as well. See Trial Tr. p. 545, lines 4-6.

> In regards to this allegation of ineffective assistance of counsel, this Court finds that Counsel's performance was reasonable and effective.  Counsel testified that in his professional opinion, he did not think that this passage from the State's closing argument [was] objectionable or prejudicial to his client.  Additionally, this Court finds that the Applicant has failed to establish any prejudice resulting from … counsel's alleged ineffective assistance of counsel.  Vouching occurs when a Solicitor

attempts to· bolster the credibility of a witness by "placing the government's prestige behind a witness by making explicit personal assurances of a witness' veracity," or by "implicitly vouch[ing] for a witness' veracity by indicating information not presented to the jury supports the testimony." <u>Gilchrist v. State</u>, 350 S.C. 221, 227, 565 S.E.2d 281, 2S5 (2002), *quoting* <u>State v. Shuler</u>, 344 S;C. 604, 630, 545 S.E.2d 805, 818 (2001). This Court finds that the comment made by Assistant Solicitor Conner did not amount to improper vouching. Furthermore, the jury was charged by the trial court that determinations of credibility were solely within the province of the jury. Therefore, this Court finds that this allegation of ineffective assistance of counsel must be denied and dismissed.

(App. 690–91).

Under South Carolina law, prosecutorial argument is not improper so long as it is based on evidence in the record and reasonable inferences from that evidence. *See Humphries v. State*, 570 S.E.2d 160, 166 (S.C. 2002). A prosecutor, however, may neither vouch for nor bolster the testimony of a government witness in arguments to the jury. *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997). Vouching generally occurs when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness. "The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18–19, (citing *Berger v. United States*, 295 U.S. 78, 88–89 1935)). However, "[the] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." *Delaware v. Van Arsdall*, 475 U.S. 673, (1986) (citing *United States v. Nobles*, 422 U.S. 225 (1975)). "To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another." *United States v. Robinson*, 485 U.S. 25,

38

33 (1988).  Therefore, a federal habeas petitioner is not entitled to relief based upon the closing argument of a prosecutor, unless that argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974).

Applying this standard to the remarks at issue, there was neither a deficient performance nor resulting prejudice from counsel's failure to object because the Assistant Solicitor's comments did not so infect the trial with unfairness as to make the resulting conviction a denial of due process under *Donnelly*.  First, the PCR judge's factual findings are supported by the record and are not objectively unreasonable. *See* 28 U.S.C. § 2254(d)(2).[3]  Secondly, the PCR court's rejection of this claim was not contrary to United States Supreme Court precedent. *See Parker v. Matthews*, 132 S.Ct. 2148, 2155–56 (2012) (in a habeas proceeding, United States Supreme Court precedent, not circuit precedent, constitutes clearly established federal law).

The Assistant Solicitor was not improperly vouching for the witness' credibility in this case because he was not urging a personal belief in the witness' credibility.  The Assistant Solicitor was merely pointing out reasons why the witness was credible.  Although the witness was from the area where the murder occurred, she was not someone who hung out on the street.  Rather, she was a college student who happened to be home visiting when the murder occurred.  She was an innocent person who only became involved in the case because she heard gunshots.  The remaining comments by the Assistant Solicitor concerning this witness merely urged jurors to find her credible because the details that her testimony provided were consistent with other evidence presented in the case and, like that other evidence, proved that the petitioner was the shooter (app. 548, 558).  Yet, even assuming *arguendo* that "the comment is understood as directing the jury's attention to inappropriate considerations, that would not establish that the …[state] [c]ourt's rejection of

---

[3]Under § 2254(d)(2), this court may not grant relief based upon the state PCR judge's factual findings unless those findings are objectively unreasonable. Further, his findings are entitled to a presumption of correctness, which the petitioner must rebut by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The petitioner cannot meet his burden.

… [this] claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *July 28, 2015*, 132 S.Ct. at 2155 (citing *Harrington*, 562 U.S. at 101–02).  To the contrary, the challenged remarks were only two lines of the appendix whereas the Assistant Solicitor's entire closing argument is approximately thirteen pages long (*see* app. 545).

  Furthermore, the trial judge had admonished jurors in his opening comments explaining the trial process and that the arguments of counsel were not evidence (app. 65–66, 68–69).  Also, in light of the overwhelming evidence presented at trial, there was no prejudice from counsel's failure to object to the solicitor's brief and isolated remarks during closing; therefore, the petitioner was not prejudiced or deprived of a fair trial. *See Strickland*, 466 U.S. at 694.

  In cases where a state court considered and denied a claim on its merits, a federal habeas court may grant habeas relief only if the state court decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."  28 U.S.C. § 2254(d)(1) and (d)(2).

  A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision involves an unreasonable application of federal law when the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a particular] case," or "applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply

the principle of a precedent in a context where such failure is unreasonable." *Robinson v. Polk*, 438 F.3d 350, 355 (4th Cir. 2006). "The state court's application of clearly established federal law must be 'objectively unreasonable,' for a 'federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly.'" *Jackson v. Johnson*, 523 F.3d 273, 277 (4th Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. at 409). Based upon the foregoing, the PCR court's decision cannot be said to be the result of unreasonable application of the performance or prejudice prongs of the *Strickland* test. Accordingly, this ground is without merit.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 16) be granted. It is also recommended that the district court deny a certificate of appealability. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

July 28, 2015
Greenville, South Carolina

41

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).